Filed 1/12/23  Browne v. Falk CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| JOHN BROWNE,<br><br>　　　Petitioner and Respondent,<br><br>v.<br><br>DANIEL FALK,<br><br>　　　Appellant. | A163049<br><br>(Sonoma County<br>Super. Ct. No. SPR-094267) |

Appellant Daniel Falk is the trustee of a trust, and respondent John Browne is one of the trust's beneficiaries.  The documents governing the trust do not include an arbitration provision, but the main asset of the trust is a company with an operating agreement that does include an arbitration provision.  Both Falk and Browne are members of the company.  After Browne filed this action in probate court seeking a trust accounting and the removal of Falk as trustee, Falk filed a motion to compel arbitration of the dispute.  The trial court denied the motion.  It concluded that because Browne's claims were brought as a beneficiary of the trust, and not as a member of the company, they were not covered by the arbitration provision in the company's operating agreement.  We affirm.

1

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

Browne worked for a man named Harold Richardson starting around 1978. In 2006, Richardson executed as settlor and trustee the Harold F. Richardson Revocable Trust ("Trust"), later amended in 2011 and 2013. There is no arbitration agreement in the Trust.

Richardson placed into the Trust around 8,400 acres of real property in Sonoma County along with the tools, equipment, vehicles and cattle on the property, and the rights to timber associated with the property. The land has been owned and managed by members of the Richardson family for more than 150 years.

Then in 2012, Richardson formed the Richardson Ranch LLC (RRLLC or the Ranch) in Nevada and registered it in California as a foreign limited liability company. Its primary business is the sale of timber and timber products on the land owned by the Richardson family. Shortly after the Ranch was registered in Nevada, Richardson executed an operating agreement for it. The operating agreement includes an arbitration clause, which provides in part that "[a]ny action to enforce or interpret this Agreement or to resolve disputes between the Members, or by or against any Member, will be settled by arbitration."

At first, the Trust was the sole member of the Ranch (meaning the Trust owned 100 percent of the company), and appellant Daniel Falk was the manager. At some point Richardson transferred part of the Trust's membership in the Ranch to its current members: Browne, Falk, Falk's mother (Richardson's niece), and Falk's brother. The Trust currently owns a 79.586 percent membership interest in the Ranch.

2

Apparently as part of the transfer, in December 2013 Richardson signed an "Assignment of Membership Interests," which transferred a 0.069 percent membership interest in the Ranch to Browne. Browne signed the document under the heading "Acceptance of Assignment," which stated that Browne accepted the assignment and assumed "all obligations and undertakings of a Member" under the Ranch's operating agreement.

Richardson resigned as trustee of the Trust in 2015 and appointed Falk as successor trustee. Richardson died in 2016. Browne and Richardson's niece (Falk's mother) are currently the only two beneficiaries of the Trust.

According to Browne, Falk has acted improperly since becoming trustee. In March 2020 Browne filed a petition in probate court to compel an accounting and to remove Falk as trustee for breach of fiduciary duty. Because the parties dispute whether the operating agreement's arbitration clause covers the allegations in the petition, we summarize the allegations in detail.

According to the petition, after Richardson died Falk regularly discussed at Ranch member meetings the sale of Trust assets and how sale proceeds would benefit the Ranch. Falk, allegedly without permission from Trust beneficiaries, "frequently divulge[d] confidential information about the Trust's accounts, stock and loans at these meetings." Falk also discussed how the Trust could "bolster" the Ranch but never discussed "a mutual benefit back to the Trust."

The petition further alleges that Falk paid himself trustee fees before he had earned them and paid himself duplicative fees as trustee and as manager of the Ranch. As manager of the Ranch, Falk allegedly persuaded Ranch members to sell a parcel of Ranch property to help pay for Richardson's estate taxes. But although he was required to use sale proceeds

3

to pay estate taxes, Falk—as trustee of the Trust—lent a portion of the proceeds to the Ranch to "build up its reserves." According to the petition, this benefitted Falk personally to the detriment of Trust beneficiaries, because the Trust had less money to pay down its estate-tax liability, which led to the Internal Revenue Service seeking a lien against Trust property. Falk allegedly misrepresented the intended use of the sales proceeds as Ranch manager, then acted improperly as trustee of the Trust by failing to carry out the Trust's "explicit provision listing the payment of estate taxes as one of the paramount uses of Trust assets upon Mr. Richardson's death."

The petition further alleges, under a section titled "Failure to Protect and Preserve Trust Assets," that Falk acted improperly as manager of the Ranch by, among other things, doing business with entities that he or his family members controlled, mismanaging Ranch equipment, and abusing his management authority. Falk also is alleged to have engaged in self-dealing contracts with his and his family's separate businesses by engaging in exclusive contracts between the Ranch and the family businesses. The Ranch allegedly lost profits and absorbed unnecessary expenses by not opening logging bids to competitive third parties. And the Ranch's rights have not been protected or pursued, because "timber sales have declined while labor costs have increased, resulting in decreased profitability of the overall timber business unit."

Under a section titled "Employment Issues," the petition alleges that after Richardson died, Falk converted Browne from an employee of the Ranch to an independent contractor even though his duties remained the same. According to the petition, the alleged misclassification exposes the Ranch and Falk to liability.

Starting around 2017 and 2018, Falk allegedly ignored requests from Ranch members for information they were entitled to receive and inspect. Then in January 2019 Falk proposed at a Ranch members meeting that a parcel of property be sold to finance and develop an event-venue business he was developing elsewhere on Ranch property. Falk allegedly listed the property for sale even though members did not approve. He also allegedly spent unapproved money on the business and refused to provide Browne with information about "secret profits" being earned by Falk's own businesses, according to the petition. Additionally, Falk allegedly abused his authority as manager of the Ranch and "has acted contrary to the explicit language of RRLLC's Operating Agreement and has breached numerous fiduciary duties." The petition alleged, "By failing to take action to protect RRLLC from the abuses and breaches of its manager, Mr. Falk, as majority owner of RRLLC, by virtue of being Trustee has breached his fiduciary duties owed to the beneficiaries."

Finally, the petition alleged that Falk had "obvious conflicts of interest which render him unable to act impartially and incapable of representing the best interests of the Trust beneficiaries or the members of RRLLC." Falk allegedly "clearly acted contrary to the explicit directions and intent of the Trust and the various fiduciary laws applicable to him." Falk characterizes all the foregoing allegations as ones that he has harmed the Ranch and Browne's membership interest in the company.

The remedies sought by Browne related solely to the Trust. Browne (1) sought to compel an accounting under Probate Code sections 16062 through 16064 and 17200, subdivision (b)(7)(B)),[1] (2) alleged that Falk had breached his fiduciary duties as trustee (§§ 16420 & 16440), and (3) asked the

_____

[1] All statutory references are to the Probate Code.

5

court to remove Falk as trustee and to appoint a neutral successor trustee (§§ 15642, 17200).

Falk opposed the petition and claimed that the parties' dispute was subject to arbitration under the arbitration clause in the Ranch's operating agreement. He filed a motion to compel arbitration and to stay the action, which Browne opposed.

The trial court denied the motion to compel arbitration because Falk had not met his burden to show the existence of an arbitration agreement governing the claims at issue. The court acknowledged that the language of the operating agreement's arbitration clause was broad and that the Trust and Ranch were related, but concluded that the arbitration clause did not cover Browne's claims, which were related to the Trust.

## II.
## DISCUSSION

Falk argues that the trial court should have granted his motion to arbitrate because Browne is bound by the arbitration clause in the Ranch's operating agreement. Although Browne argues that he is not bound by the clause, we assume for purposes of this appeal that he is. Still, Falk failed to satisfy his burden of proving the existence of an enforceable arbitration agreement covering the parties' dispute over Falk's role as trustee. (See *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) "Where, as here, the evidence is not in conflict, we review the trial court's denial of arbitration de novo." (*Ibid.*)

We agree with Falk to the extent that the operating agreement's arbitration clause is broad, providing that "[a]ny action to enforce or interpret this Agreement or to resolve disputes between the Members, or by or against any Member, will be settled by arbitration." But Browne's petition is not seeking to "enforce or interpret" the operating agreement, as such. Instead, it

6

seeks to compel an accounting by Falk as trustee of the Trust (§§ 16062–16064, 17200, subd. (b)(7)(B)) and to remove Falk as trustee for breach of fiduciary duty (§§ 15642, 17200, subd. (b)(10)). The allegations center on Falk's alleged wrongdoing in his role as trustee: his alleged failures to provide a requested accounting of the Trust (§ 17200), to treat Trust beneficiaries impartially (§ 16003), to enforce Trust claims against other business entities (§ 16010), and to preserve Trust property (§ 16006).

As the trial court concluded, while some of the petition's allegations may be related to Falk's role as manager of the Ranch, "the claims themselves are brought by [Browne] as a beneficiary of the trust, not as a member of the [Ranch]; and the claims are made against [Falk] in his capacity as the trustee, not as the Manager of the [Ranch]." The court correctly observed that the petition invokes the court's equitable jurisdiction to oversee the Trust's affairs and to enforce the trustee's duties, which "are the inherent duties of the Court and would only be tangentially related to matters involving the operations of the" Ranch.

Falk argues that the court must examine whether the arbitration agreement encompasses the factual allegations of the petition, regardless of whatever "legal label" Browne assigned to the claims. (*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.* (4th Cir. 1988) 863 F.2d 315, 319.) He goes so far as to claim that Browne's counsel "admitted" at the hearing in the trial court that Browne's petition was "artfully pleaded to avoid arbitration." What counsel acknowledged was that the petition was carefully drafted to make clear that Browne was pursuing his rights as a Trust beneficiary, as opposed to as a member of the Ranch. Falk claims that the term "[a]ny action" and the fact the clause contemplates arbitration "between . . . or by or against any Member" mean that "any dispute between members (including

7

Mr. Browne and Mr. Falk, both of whom are Members) or against a Member must be arbitrated." We decline to interpret the term so expansively as to encompass non-operating agreement disputes.

Falk argues that "any action that requires interpretation of any provision of the" Ranch's operating agreement "is within the wide ambit of the provision." But we disagree with his contention that "Browne's claims are inexorably intertwined with the provisions of the [operating agreement] and the duties and standards of care that they impose upon the manager, Mr. Falk, requiring interpretation and enforcement of the [operating agreement]." Falk apparently refers to a provision of the agreement stating that the manager may be removed "for cause" only if members owning two-thirds of all membership interests determine that there is good cause, defined as "gross negligence or willful misconduct." Falk claims that because Browne "wants the probate court to order the trustee to remove Mr. Falk as Manager, one of the issues central to this litigation is who has the right to remove the Manager of the Ranch LLC for good cause." The reference to removing Falk as manager of the Ranch appears in a section of the petition titled "Conflict of Interest." The petition alleges that Falk has conflicting and competing interests as the trustee of the Trust, a member of the Ranch, the Ranch's manager, and an owner and manager of separate businesses. It then states that "[t]hese conflicts can be mitigated only by his suspension and removal as trustee of the Trust and as manager of RRLLC." But the petition's causes of action seek only removal of Falk as *trustee of the Trust* pursuant to the Probate Code, not as manager of the Ranch because of a violation of the operating agreement.

Falk similarly asserts that "whether [he] violated the [operating agreement] is an indispensable predicate of Mr. Browne's claim that Mr. Falk

8

breached his fiduciary duties as trustee." We accept that the Trust and the Ranch are interconnected and that litigation over the Trust will affect the Ranch because it is the Trust's primary asset. But this effect does not transform this trust into one governed by the operating agreement's arbitration clause. Even if the trust documents themselves contained an arbitration provision, the arbitrability of the parties dispute would be uncertain. (See *McArthur v. McArthur* (2014) 224 Cal.App.4th 651, 663.) Browne has pointed to no authority, nor are we aware of any, that leads to a conclusion that when—as here—the governing trust documents contain no arbitration provision, a probate court must nonetheless compel arbitration in trust proceedings because a company that is an asset of the trust has an operating agreement with an arbitration provision.

In light of our conclusion, we need not address the parties' arguments regarding Browne's alternative contention below, that the operating agreement's arbitration clause is unconscionable.

### III.
### DISPOSITION

The order denying the motion to compel arbitration is affirmed. Browne shall recover his costs on appeal.

_____

Humes, P.J.

WE CONCUR:

_____

Margulies, J.

_____

Devine, J. *

\*Judge of the Superior Court of the County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*Browne v. Falk*  A163049

10